UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x          **ECF CASE**

EUGENE LOWE,

                                                Docket No.: 09 Civ 7766(SCR)(GAY)

                  Plaintiff,

      -against-

CUSA, LLC, d/b/a THE DOUBLETREE
HOTEL & SUITES, TARRYTOWN, and
RICH FRIEDMAN, as General Manager
of Doubletree Hotel,

                  Defendants.

----------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO QUASH SUBPOENAS DUCES TECUM
## AND FOR A PROTECTIVE ORDER

Respectfully submitted,

The Law Office of
**GOODSTEIN & ASSOCIATES**
*Attorneys For Plaintiff*
270 North Avenue, Suite 410
New Rochelle, New York 10801
(914) 632-8382

On the Brief:
Paula Johnson Kelly, Esq.  (PJK 8889)

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Anderson v. Abercrombie and Fitch Stores, Inc.,
2007 WL 1994059 (S.D.Cal., July 02, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..1, 2

Bank Brussels Lambert v. Chase Manahattan Bank,
1996 WL 512287, (S.D.N.Y.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Brown v. City of Syracuse,
648 F.Supp.2d 461(N.D. New York. Sept. 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fears v. Wilhelmina Model Agency, Inc.,
2004 WL 719185 (S.D.N.Y. April 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Grigsby & Assoc., Inc. v. Rice Derivative Holdings, L.P.,
2001 WL 1135620 (S.D.N.Y. Sept. 26, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hickman v. Taylor,
329 U.S. 495, 67 S.Ct. 385 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

In the Matter of the Application of Sumar,
123 F.R.D. 467 (S.D.N.Y.,1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Alliance Pharmaceutical,
1995 WL 51189 (S.D.N.Y.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ireh v. Nassau University Medical Center,
2008 WL 4283344 (E.D.N.Y., Sept. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mattel, Inc. v. Walking Mountain Prods.,
353 F.3d 792 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Moon v. SCP Pool Corp.,
232 F.R.D. 633 (C.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Olszewski v. Bloomberg L.P.,
2000 WL 1843236 (S.D.N.Y. Dec.13, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Spina v. Our Lady of Mercy Medical Center,
2001 WL 630418, (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sur. Ass'n of Am. v. Republic Ins. Co.,
388 F.2d 412 (2d Cir.1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Surles v. Air France,
2001 WL 1142231 (S.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Travelers Indemnity Co. v. Metropolitan Life Ins. Co.,
228 F.R.D. 111 (D.Conn.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. v. I.B.M. Corp
83 F.R.D. 97, 104 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Washington v. Thurgood Marshall Academy,
230 F.R.D. 18 (D.D.C., July 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## PRELIMINARY STATEMENT

Plaintiff, by his attorneys, and non-party Ms. Joan George, jointly submit this Reply Memorandum of Law in response to Defendants' opposition to, and in further support of, the instant motion to quash Defendants' subpoenas *duces tecum* and/or for a protective order.

Movants submit that Defendants' subpoenas are impermissibly over broad, request irrelevant information, and unduly invade privacy rights. Therefore, movants urge the Court to limit this discovery, to quash the subpoenas, and to grant movants' motion.

## ARGUMENT

### Defendants' Nine Subpoenas Should Be Quashed and/or Modified As They Seek Irrelevant Information Beyond the Scope of This Action and They Are Unduly Burdensome

According to their opposition papers, defendants' subpoenas were supposedly issued to obtain discovery on "whether Plaintiff properly mitigated his damages". (pg 7-8)  However, even a cursory review of all nine subpoenas show their scopes far exceed commands to produce only that information which would be relevant to defendants' mitigation defenses. Moreover, in these discovery instances, the Court has discretion as to relevancy and burdensomeness.

### A. The Court Has Discretion to Determine Relevancy For Discovery

Defendants' subpoenas are subject to the relevance requirements in Fed.R.Civ.P. 26(b)(1). However broadly defendants wish to define it, relevancy is not without "ultimate and necessary boundaries." Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385 (1947).  Accordingly, District Courts have broad discretion to determine relevancy for discovery purposes. Anderson v. Abercrombie and Fitch Stores, Inc., 2007 WL 1994059 at * 1 (S.D.Cal., July 02, 2007) Moreover,

District Courts also have broad discretion to limit discovery and may even limit the scope of a discovery method, if the Court determines that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." or where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C).

## B. The Court Has Discretion to Determine When A Subpoena Is Burdensome

Courts also have broad discretion in determining whether a subpoena is unduly burdensome. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."Travelers Indemnity Co. v. Metropolitan Life Ins. Co., 228 F.R.D. 111, 113 (D.Conn.2005)(quoting U.S. v. IBM Corp., 83 F.R.D. 97, 104 (S.D.N.Y.1979)). For example, a subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of the litigation. Anderson v. Abercrombie and Fitch Stores, Inc., 2007 WL 1994059 at * 2,* 7, ("while the Court finds the Board records are relevant, it also finds the subpoena is overbroad to the extent that it seeks production of records far exceeding Plaintiff's dates of employment... The Court therefore finds it appropriate to limit the proposed subpoena's scope.") See also Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 813-14 (9th Cir.2003) (holding subpoenas properly quashed where their overbreadth led the court to conclude that subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information"). Moreover, consideration must be given to the burden placed upon a non-party. See, eg, Fears v. Wilhelmina Model Agency, Inc., 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004) ("[T]he Court

-2-

should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty.")

Moreover, Rule 45(c)(3)(A) mandates that the Court consider such factors as relevance, the serving party's need for the requested documents, the breadth of the discovery request, the particularity with which the documents are described, and the burden imposed. See, Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D.Cal.2005). Therefore, in reviewing defendants' subpoenas we find them to be irrelevant and overly broad in scope and time and, therefore, to impose a burden.

## C.  The Employment Subpoenas Are Overly Broad and Seek Irrelevant Information

Defendants would have this Court believe the employment subpoenas "simply" seek only the mitigation information (pg 8) or for calculations of damages (pg. 9).  However, defendants' opposition papers have not explained how their subpoena seeking calculation of lost wages information from Securitas, plaintiff's prior employer, or mitigation information from Aramark, plaintiff's post-employer, would, could or should require the discovery of:

> "the complete personnel file for Eugene Lowe, including documents showing . . . (c) promotions, demotions and transfers given; (d) salaries received, including payroll records showing Mr. Lowe's weekly salaries; (e) any disciplinary action taken; (f) performance evaluations, whether formal or informal;" and "(g) attendance records" (emphasis added).

As plaintiff stated in his Memorandum of Law (pg. 4-5), the only relevant information from Securitas, plaintiff's prior employer, would concern (1) the date of and reason for the severance of plaintiff's employment from Securitas and (2) the salary plaintiff was earning at that time. Clearly, information to aid or support defendants' defensive positions would not encompass the other irrelevant, overly broad and expansive areas into plaintiff's prior employment as set forth in and commanded by defendants' subpoena from which defendants now ask this Court to permit discovery.

-3-

See <u>Washington v. Thurgood Marshall Academy</u>, 230 F.R.D. 18, 25 (D.D.C., July 20, 2005)(While

plaintiff's employment records are relevant, the subpoena is overbroad. Defendant should only be

allowed to access records regarding the circumstances surrounding plaintiff's termination at her

previous employers. . . Defendant is not entitled to plaintiff's entire employment file, but only the

specific portions that may lead to admissible evidence.")

Similarly, defendants' opposition papers (pg. 10) have not explained, nor do they justify, why

mitigation information from plaintiff's <u>post</u>-employment with Aramark Food[1] would require inquiry

into and disclosure of the same overly broad areas. Clearly, if defendants wish to challenge plaintiff

on his mitigation efforts after he left defendants' employ, the only relevant areas of inquiry would

be (1) the dates of plaintiff's employment, (2) the wages he received during that employment (for

which a W2 was provided to defendants) and (3) the reason for the severance of that employment.

Therefore, contrary to defendants' erroneous assertion in their opposition Brief (pg. 9), the

documentation requested in the Employment Subpoenas is NOT all reasonably related to these

mitigation and lost wages issues.[2]

---

[1] Not Aramark Correctional which was not plaintiff's employer.

[2]

While discussing lost wages, defendants raise in a footnote (#2) as a rationale for requesting the overly broad information, what defendants believe to be plaintiff's perception of discrimination at some unspecified prior time in his prior employment. However, as the pages defendants cite (Exhibit 8, p. 116-117) specifically show plaintiff also testified he did not speak to anyone at work about his concern, nor did he file a grievance or a complaint with any outside agency. Moreover, the boilerplate Securitas employment subpoena, which not surprisingly requests exactly the same information as the post employment Aramark subpoena, did not specify defendants wanted any information on any possible claims of race discrimination made by plaintiff. Therefore, this recent inclusion in the opposition papers of this erroneous additional reason for the overly broad prior Securitas employment subpoena can only be purely specious and should be disregarded in the Court's consideration of this motion.

While defendants may be entitled to obtain employment records relating to plaintiff's severance of employment with Securitas and Aramark, they are not entitled to the panoply of reports and records they requested.

Accordingly, each of the two[3] employment subpoenas should be quashed or modified so as to require the production of the only relevant information: (1) the dates of plaintiff's employment, and (2) the reason for the severance of that employment, and only for Securitas, (3) the salary plaintiff earned at the time his employment ended.

D:      **The Overbroad Nature of the Employment Subpoenas Warrants the Court Overlooking the Untimeliness of The Motion**

Plaintiff does not deny the inadvertence of plaintiff's counsel's law firm to confer with defense counsel regarding the inappropriateness of defendants' employment subpoenas prior to plaintiff including in the instant motion those three (3) subpoenas along with defendants' other six (6) subpoenas on which counsel had conferred, but were unable to resolve without Court intervention.  However, plaintiff respectfully asserts such unintentional conduct on plaintiff's counsel's part should be overlooked by the Court given: (1) defendants' position on these three subpoenas as voiced in their opposition to the motion[4]; and (2) the over breath of the subpoenas which warrants the Court's action.

---

[3]

Defendants' subpoena to Aramark Correctional should be quashed as Aramark Correctional was never plaintiff's employer and defendants have not supplied any evidence to substantiate their reason to request discovery from that erroneous source.

[4]

As evidenced by defendants' opposition papers, defendants still argue that these three subpoenas command production of only relevant information, thereby requiring judicial intervention to resolve.

As the exhibits show, all nine subpoenas at issue were returnable on October 29, 2010[5], the deadline for discovery in this action, and this motion was filed on November 8, 2010. Therefore, although that portion of the instant motion covering the three employment subpoenas may be "untimely" by ten (10) days, plaintiff respectfully contends the Court should exercise its discretion and consider the merits of plaintiff's motion to quash or modify the overly broad and burdensome employment subpoenas along with the Court's consideration of the timely motion on the similarly broad and burdensome financial subpoenas.

"The decision of whether to quash or modify a subpoena is within the district court's discretion." Olszewski v. Bloomberg L.P., 2000 WL 1843236, at *4 (S.D.N.Y. Dec.13, 2000). While Fed. R. Civ P. Rule 45 sets forth the requirements for filing a timely motion to quash, Courts often exercise their discretion to consider motions to quash that were not "timely" filed within the meaning of that Rule. See, Ireh v. Nassau University Medical Center, 2008 WL 4283344, at * 3 (E.D.N.Y., Sept. 17, 2008) (because the Court found the subpoena to be overbroad in scope, and because the non-party subpoenaed still had not produced the documents as of the date the motion to quash was filed, the Court chose to exercise its discretion to consider the merits of Plaintiff's motion to quash and modified the subpoena even though the motion had been filed eleven days after the return date). See Grigsby & Assoc., Inc. v. Rice Derivative Holdings, L.P., 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (considering untimely motion to quash because circumstances, including clearly overbroad nature of subpoena, warranted overlooking the timeliness issue); Olszewski v. Bloomberg L.P., 2000 WL 1843236, at *4 (S.D.N.Y. Dec.13, 2000)(the Court finding

---

[5] Moreover, all of the subpoenaed documents were to be delivered to the Court's Subpoenaed Record Room, not to defense counsel. So any irrelevant documentation has not been viewed.

that Petitioner was entitled to protection from discovery of his confidential records, granted the untimely motion to quash). See also Sur. Ass'n of Am. v. Republic Ins. Co., 388 F.2d 412, 416 (2d Cir.1967) (finding that a delay until the deposition in objecting to a subpoena *duces tecum* was understandable under the circumstances of the case).

## E. The Financial Subpoenas Should Be Quashed as Overly Broad and Burdensome

Even though defendants received documentary evidence in plaintiff's W2s and paycheck stubs showing plaintiff's earned income, defendants erroneously assert to this Court as a rationale for their overly broad financial subpoenas that it is "reasonable" for defendants to go on a baseless fishing expedition into plaintiff's and his girlfriend's individual finances to seek additional discovery to determine IF plaintiff had additional earned income.   However, clearly, defendants' subpoenas request more than relevant information even for this excessive purpose.

### (i) Defendants Have Not Justified The Overly Broad Financial Subpoenas

Defendants have not explained, nor can they explain, why they believe they are entitled to compel or receive, for the purpose of determining plaintiff's earned income:

> "Any and all records related to an account maintained by [plaintiff or Ms. George] from August 2008 to the present, including documents constituting or relating to. . .cancelled checks, . . . withdrawal tickets; money orders; wire transfers; account statements, records and ledgers; documents relating to the opening and closing of an account; and other financial records pertaining to same."

Defendants' overly broad command far exceeds the acceptable scope of looking for "other income" which plaintiff "may have had" and deposited into bank accounts.

Defendants have not explained how money going out of plaintiff's or Ms. George's accounts, whether by withdrawal ticket, cancelled check or wire transfer, can verify any earned income plaintiff "may" have had.   Defendants have not explained how documents related to the opening of

-7-

accounts plaintiff or Ms. George had before or during plaintiff's employment with defendants can verify plaintiff's post-employment earned income. Defendants also have not explained why they should be entitled to all of the same commanded documentation from plaintiff's Federal Credit Union account, even though it was opened <u>after</u> plaintiff finally obtained replacement employment in March 2010 and even though defendants admit they already received documentary proof relating to plaintiff's post-defendant employment income. (p. 13). If, as defendants' papers state, all they seek to do with the subpoena is "verify this information from other sources", the subpoenas as drafted do not just seek that verification, but expend well beyond the scope of what rights the defendants may possess under, and show an abuse of, the subpoena power.

### (ii) Defendants Have Not Shown A Basis To Breach Ms. George's Privacy Rights

Furthermore, aside from the points made, *supra*, while defendants assert the "purpose of the George Financial Subpoenas is to confirm whether Plaintiff transferred any income he received during the relevant period into" Ms. George's joint or individual accounts (p. 16), such an gross assertion without a basis is insufficient to warrant this Court's grant of defendants' overly broad invasion of Ms. George's privacy rights to her personal financial records.

Contrary to defendants' assertion, Ms. George has identified a protection against the disclosure of her documents. Ms. George contends that the subpoena must be vacated not due to some privilege, but to her personal right inherent in the documents. See, eg, <u>In the Matter of the Application of Sumar</u>, 123 F.R.D. 467, 473 (S.D.N.Y.,1988). Moreover, the burden placed upon Ms. George by the subpoenas is not "minimal" just because the subpoenas are issued to the banks as defendants submit; the burden upon Ms. George is great because the subpoenas command the production of her personal documentation regarding topics unrelated to and beyond the scope of this litigation to which she is not a party.

-8-

## F. Defendants Conjecture Is Insufficient To Warrant Approval of the Subpoenas

With all due respect to defendants, they have not submitted an iota of proof or any basis or bases for their misguided belief of plaintiff's additional or hidden earned income to counter the documentary evidence already produced or the testimonial evidence already obtained to warrant the Court's approval of these extensive and invasive fishing expeditions into plaintiff and Ms. George's financial records. Furthermore, defendants have failed to demonstrate that all of the documents sought through all of the subpoenas are relevant to claims and defenses in this lawsuit and that good cause exists to obtain such discovery at this time and in this manner. Defendants "belief" that the records "may" contain or "may demonstrate" is insufficient to satisfy the relevance requirement under Rule 26 See, Surles v. Air France, 2001 WL 1142231 (S.D.N.Y.2001)(quoting Spina v. Our Lady of Mercy Medical Center, 2001 WL 630418, *2 (S.D.N.Y.2001)(The information sought does not become relevant merely because a party speculates that it might reveal useful material. "Where a [party] fails to produce any specific fact whatsoever to support a[n] ... allegation, a district court may, in its discretion, refuse to permit discovery ...")

Other than conclusory and speculative statements that the bank records of plaintiff and Ms. George "may" yield relevant information[6], defendants have no grounds to warrant the Court's grant of these subpoenas. Moreover, defendants do not provide any reason why discovery regarding these records could not have been sought prior to the close of discovery, nor why plaintiff's employment records could not have been requested by authorization during discovery[7]. In sum, defendants now,

---

[6]

Defendants claim a review of the records "may" yield information that "may" demonstrate a limitation to Plaintiff's claim. (p.16). However, even if defendants review the bank statement and undoubtably find deposits made into the account(s), defendants cannot explain how they intend to develop any admissible evidence that "may" be found without further discovery, which is closed.

[7]

Which would have been a proper and less invasive source that issuing subpoenas, especially since

on the close of discovery, seek what is essentially additional discovery on speculation which could have been obtained during the regular discovery process. See, eg. <u>Brown v. City of Syracuse</u>, 648 F.Supp.2d 461, 467(N.D. New York. Sept. 1, 2009); also <u>Bank Brussels Lambert v. Chase Manahattan Bank</u>, 1996 WL 512287, at *3  (S.D.N.Y.1996)(defendant "will not be given license to search the files based on speculation"); <u>In re Alliance Pharmaceutical</u>, 1995 WL 51189, *1 (S.D.N.Y.1995)("[D]iscovery requests ... cannot be based on pure speculation").

Moreover, defendants have not explained how their reviewing of these personal bank records showing money going <u>into</u> Ms. George's accounts from September 2008 through March 2010[8] could confirm whether plaintiff transferred any earned income he received into Ms. George's account.

## CONCLUSION

In consideration of the foregoing, Plaintiff and Ms. Joan George respectfully request that their motion be granted, that Defendants' subpoenas be quashed, or, in the alternative, that the subpoenas be modified to only permit disclosure of relevant and non-private information, and for such other and further relief that this Court deems just and proper.

Dated: New Rochelle, New York
      November 29, 2010

                      Yours, etc.
                      Law Office of
                      **GOODSTEIN & ASSOCIATES**

                      By: Paula Johnson Kelly (PJK 8889)
                      *Attorneys for Plaintiff & Ms. George-on the motion*
                      270 North Avenue, Suite 410
                      New Rochelle, New York 10801
                      (914) 632-8382

---

defendants have known about plaintiff's prior employment since his employment with defendants, and his claims since service of the Complaint.

[8] The scope is also overly broad as plaintiff commenced replacement employment on March 31, 2010.